# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kevin D.**
**Respondent Below, Petitioner**

**vs)  No. 16-0530**  (Kanawha County 10-D-670)

**Beth Ann R.**
**Petitioner Below, Respondent**

FILED

**March 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kevin D., by counsel Wayne King, appeals the Circuit Court of Kanawha County's May 6, 2016, order denying his appeal from family court. Respondent Beth Ann R., by counsel Mark A. Swartz, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and respondent were married on March 19, 1998, and separated on March 20, 2010.[1] Respondent filed her divorce petition on April 13, 2010, citing irreconcilable differences. A joint motion for bifurcation of the divorce proceedings was granted by the family court on May 21, 2010, and an agreed bifurcation order was executed by the court and entered on May 28, 2010. The divorce was granted based upon irreconcilable differences. During a hearing on February 25, 2014, the family court heard testimony and considered evidence. Thereafter, it entered its March 14, 2016, final order setting forth the following relevant findings of fact: respondent continues to reside in the former marital residence with the couple's two minor children; petitioner deeded his interest to the marital home to respondent in August of 2011; at the time of the divorce, the parties owned two other properties together – one used by petitioner's business and the other a small house that petitioner moved into in April of 2011; in September of 2007, the Clay County Bank made a loan to the parties that was secured by three pieces of real estate – two in Clay County and one in Kanawha County; at the time of the Clay County Bank loan, the principal amount owed on the three properties totaled $262,065.90; the loan amount was $321,300 because, in addition to paying off the three prior mortgages, it was used to pay credit cards and student loans; respondent's Exhibit 19 pertained to two American

---

[1] Respondent filed a divorce petition in 2006, but it was withdrawn when the parties reconciled.

Funds accounts, the larger of which was intended for the benefit of the parties' two children to be used to fund their college educations, though respondent acknowledged there was no indication on the face of Exhibit 19 that identified either account as a college account; the fair market value of the former marital residence as of January 28, 2013, was $232,000; and petitioner admitted that there were Coverdale IRA accounts for the children's education at Clay County Bank but he cashed them in after the divorce proceedings began.

Based on its findings, the family court assigned respondent 60.3% of the principal balance then due on the Clay County Bank loan while petitioner was assigned 39.7%. Respondent was ordered to quitclaim all of her title and interest in the Clay County properties to petitioner. The family court directed that an equitable distribution of the marital estate be carried out in accordance with the exhibit attached and incorporated as part of the final order. In addition to the assignment of distribution for the Clay County Bank loan, petitioner was ordered to reimburse respondent an amount equal to the Coverdale and Fidelity accounts he cashed out.

On April 12, 2016, petitioner appealed the family court's final order to the Circuit Court of Kanawha County. On May 6, 2016, the circuit court denied that appeal and entered an order finding that a hearing was not necessary in order for it to make a determination. The circuit court found that the family court had not abused its discretion, did not act contrary to constitutional or statutory authority, and its decision was supported by substantial evidence and facts and was not arbitrary or capricious. Petitioner appeals from that order.

This Court has consistently applied the following standard of review:

> "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*" Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004).

Syl. Pt. 1, *Zickefoose v. Zickefoose*, 228 W. Va. 708, 724 S.E.2d 312 (2012).

In the instant matter, petitioner asserts three assignments of error. First, he argues that the family court erred and abused its discretion because it entered a final order in 2016 using financial values for 2013 in determining the equitable distribution of financial accounts. Petitioner argues that the family court failed to account for passive appreciation that may have occurred between the 2014 hearing and the entry of its order in 2016. Therefore, he contends that the family court used financial information for that account that was more than two years old in entering its March 14, 2016, final order.

As this Court recognized in *P.A. v. T.A.*, 238 W. Va. 216, __ 793 S.E.2d 866, 873 (W.Va. November 15, 2016), "any increase in the value of a marital asset, whether that increase came from passive or active appreciation, should be considered marital property" (quoting *Dababnah v. Dababnah*, 207 W. Va. 585, 590, 534 S.E.2d 781, 786 (2000)). Further, in *Dababnah*, this Court also recognized that a post-separation increase in the value of an investment account

classified as marital property was also marital property. *Id*. According to the family court order, petitioner did not challenge the apportionment or value of the 401(k). In addition, the exhibit attached to the order states that the marital balance in respondent's 401(k) account would be used as the balancing account and "QDRO ["qualified domestic relations order"] amount to balance." The Internal Revenue Code defines a qualified domestic relations order as an order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to the participant under a plan, . . ." 26 U.S.C. § 414(p)(1)(A)(i). As this Court has recognized, the requirements of a QDRO are defined by federal law, and the plan administrator follows the directions of the QDRO, taking the actions necessary to secure the other party's interest in the pension or retirement. *Chenault v. Chenault*, 224 W. Va. 141, 145-46, 680 S.E.2d 386, 390-91 (2009). In the instant case, the family court order clearly contemplates the entry of a subsequent order so that further accounting will be done contemporaneous with the entry of the QDRO, including the updated financial figures. In addition, the family court order specifically states that petitioner did not object to the apportionment or value of the 401(k) at the time of the final hearing. Therefore, we find that the circuit court did not err in affirming the family court's order on this issue.

In his second assignment of error, petitioner argues that the family court abused its discretion by designating a mutual fund and bank stock as college funds. He contends that while the "Growth Fund of America-A" mutual fund was purchased during the marriage, it was marital property rather than a college fund for the couple's children. Petitioner also argues that Coastal Bank stock was purchased by the parties but should have been designated as marital property, rather than a college fund for the children. He asserts that he never agreed to pay college expenses for the children and the family court order does not require him to do so. As set forth above, "we review the findings of fact made by the family court judge under the clearly erroneous standard . . . ." Syl., in part, *Carr v. Hancock* at 475, 607 S.E.2d at 804. In the 2006 divorce proceeding, the parties submitted documents designating certain assets as college funds. In addition, the family court reviewed e-mails, including an e-mail from petitioner to respondent confirming the existence of a 529 college savings plan and additional accounts he stated were for the children's educational expenses. Petitioner then denied, under oath, that one of those accounts was for his daughter's education. He admitted, however, that there were Coverdale IRA accounts for the children's education at the Clay County Bank but that he had converted those accounts to cash. Based on the evidence and testimony before it, the family court made its factual determinations. Petitioner has not pointed to any evidence or testimony that shows that such determination was clearly erroneous. Thus, we find no error in this regard.

Petitioner's final assignment of error is that the family court abused its discretion in its allotment of marital debt owed to the Clay County Bank related to three pieces of real property and additional marital debt. He argues that at the time of the May 21, 2010, hearing, the payment on the consolidated loan with the bank was $1,950 per month. The family court entered a temporary order requiring respondent to pay $750 per month toward that mortgage, which gave her exclusive use and possession of the marital residence in Kanawha County, and gave petitioner exclusive use and possession of the two properties in Clay County. Petitioner was ordered to apply rent from a tenant in one of the Clay County properties in the amount of $450 per month toward the mortgage loan, leaving him to pay $750 per month toward the mortgage loan. He argues that the division was not equitable because the Kanawha County residence

3

appraised for $232,000 while the Clay County properties appraised for a total of $133,000. Therefore, he asserts that he should be responsible for 36.5% of the Clay County Bank debt rather than the 39.7014% imposed by the family court.

One piece of information petitioner ignores in his argument is the fact that the consolidated loan included not only the subject properties, but also approximately $59,000 in other obligations. While the couple paid down the total amount owed prior to their separation, the amount owed still exceeded the total of the three mortgages at the time the family court entered its order. Petitioner failed to present any trial testimony regarding the value of the various properties and offered only a seven-year-old appraisal of one of the Clay County properties. Based on the information before this Court, we find that the circuit court did not err in affirming the family court's findings on this point.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 10, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4